## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------- x
CHERYL L. YEBOAH and KWADWO A.    :
YEBOAH,                           :
                                  :
          Plaintiffs,             :
                                  :
v.                                :
                                  :
U.S. BANK, N.A.; STATE OF         :
CONNECTICUT; THE HON. ROBERT      :
VACCHELLI; THE HON. M. NAWAZ      :
WAHLA; THE HON. CLAUDIA BAIO;     :
THE HON. SHEILA HUDDLESTON; THE   :
HON. KEVIN DUBAY (DEC.); THE      :
HON. ANTONIO ROBAINA; THE HON.    :   Civil No. 3:24-CV-351 (AWT)
CESAR NOBLE; THE HON. NEETA       :
VATTI; NATIONSTAR MORTGAGE, LLC;  :
TINA MARIE BRAUNE; SANDELAND      :
EYET LLP; CRYSTAL LYN COOKE;      :
MCCALLA RAYMER LIEBERT PIERCE,    :
LLC; JEFFREY M. KNICKERBOCKER;    :
JOHN J. RIBAS; MARIO R. ARENA;    :
CHRISTOPHER J. PICARD; S. BRUCE   :
FAIR; JOSHUA PEDREIRA; VICTORIA   :
L. FORCELLA; JOSEPH R. DUNAJ;     :
WILLIAM G. PEACOCK; and           :
CHARDYNEA CROSSDALE,              :
                                  :
          Defendants.             :
------------------------------- x
```

### RULING ON MOTIONS TO DISMISS

Plaintiffs Cheryl Yeboah and Kwadwo Yeboah seek damages for alleged injuries they claim were caused by actions of the defendants during or related to foreclosure proceedings in Connecticut Superior Court. See Amended Complaint ("Am. Compl.")

(ECF No. 19) at 16–17.[1] Three groups of defendants have filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim. See ECF Nos. 31, 34, 47–59. For the reasons below, all the motions to dismiss are being granted.

## I.    BACKGROUND

The plaintiffs' Amended Complaint asserts various theories of wrongdoing related to a mortgage foreclosure action in state court. The court takes judicial notice of the Connecticut Superior Court docket in U.S. Bank N.A. v. Cheryl Yeboah, No. HHD-CV12-6033619, which reflects that the foreclosure action lasted twelve years. See U.S. Bank's Mem. in Supp. of Mot. to Dismiss (ECF No. 67) ("U.S. Bank Mem."), Ex. A. See also Glass Mem. in Supp. of Mot. to Dismiss (ECF No. 68) ("Glass Mem.") at 2 n.1 (stating that foreclosure defendant filed six denied motions to dismiss, as well as many other "dilatory pleadings").

Since that action was commenced in 2012, Cheryl Yeboah has lost at trial in Superior Court after failing to appear; has lost a prior federal lawsuit in this court challenging the adverse foreclosure judgment; has lost post-trial motions in Superior Court challenging the standing of the foreclosure plaintiff; and has lost two appeals to the Connecticut Appellate Court, the first for failure to file any brief and the second

---

[1] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

for failure to file a compliant brief. See State Defs.' Mem. in
Supp. of Mot. to Dismiss (ECF No. 34-1) ("State Mem."), at 3-5;
Yeboah v. Bank of Am., N.A., No. 3:18-cv-2020 (VAB), 2019 WL
3388045 (D. Conn. Jul. 26, 2019). The Connecticut Appellate
Court dismissed a third appeal by Cheryl Yeboah as moot on
February 14, 2024, after title had already vested in the
foreclosure plaintiff. See State Mem. at 5. Cheryl and Kwadwo
Yeboah filed the instant action on March 13, 2024.

The Amended Complaint claims that the defendants in this
case conspired against the plaintiffs to advance a fraudulent
foreclosure action, presenting neither proof of a debt nor an
injured party. The plaintiffs seek $259,015,000.00, to be
denominated in $50 American Eagle .999 gold bullion coins. See
Am. Compl. at 10-11, 14, 16-17.

The Amended Complaint seeks damages based on lost income
and medical costs arising from the demands of litigating the
state court foreclosure action and from the stress of the
adverse foreclosure judgment. See id. at 11-12. At pages 11-12,
the Amended Complaint references these injuries using the first
person singular, referring to Cheryl Yeboah as the foreclosure
defendant. In addition, "Plaintiffs request compensatory and
general damages for expenses for legal expenses, medical bills,
mental anguish associated with living with the consequences of
the defendant's negligence, loss of income, and damaged credit

-3-

score, embarrassment from having plaintiffs house listed on
Zillow and other Real estate foreclosure websites before [and]
while the case is in litigation." Id. at 14.

The Amended Complaint includes both federal and state
causes of action: claims pursuant to 42 U.S.C. §§ 1983, 1985,
and 1986 for violations of the Fourteenth Amendment's Due
Process Clause, the Sixth Amendment's Confrontation Clause, and
the Seventh Amendment, as well as 18 U.S.C. §§ 241, 242, and
245; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.
§§ 1692e (false representations), 1692f (unfair practices),
1692j (deceptive forms), and 1692g (wrongful disclosure); the
Tucker Act, 28 U.S.C. § 1491; federal criminal conspiracy;
obstruction of justice; the Connecticut Unfair Trade Practices
Act, Conn. Gen. Stat. § 42-110a et seq.; negligence; slander of
title; slander of credit; intentional infliction of emotional
distress; breach of contract; malicious prosecution; violations
of various Connecticut criminal statutes; and claims for both
fraud and forgery, which are not clearly categorized as either
federal or state in nature.

Three groups of defendants have filed motions to dismiss
the Amended Complaint for lack of subject matter jurisdiction
and for failure to state a claim. The first is comprised of U.S.
Bank; Nationstar Mortgage, LLC; McCalla Raymer Leibert Pierce,
LLC; Jeffrey M. Knickerbocker; Christopher J. Picard; S. Bruce

-4-

Fair; Victoria L. Forcella; Joseph R. Dunaj; Mario Arena; John Ribas; Joshua Pedreira; William Peacock; and Chardynea Crossdale. See U.S. Bank Mem. at 1 n.1. The second group is the State Defendants: the State of Connecticut; the Hon. Robert Vacchelli; the Hon. M. Nawaz Wahla; the Hon. Claudia Baio; the Hon. Sheila Huddleston; the Hon. Kevin Dubay (deceased); the Hon. Antonio Robaina; the Hon. Cesar Noble; and the Hon. Neeta Vatti. See State Mem. at 1. The third group is Daniel B. Glass and the law firm Glass & Braus, LLC. See Glass Mem. at 1.

## II.  LEGAL STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 790 F.3d 411, 416-17 (2d. Cir. 2015) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

However, the court is "not to draw inferences from the complaint favorable to the plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). Rather, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer, 416 U.S. at 236. Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to

relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (citations and internal quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). The issue on a motion to dismiss "is not whether [the] plaintiff will prevail, but whether [the plaintiff] is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice

may be taken." <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

"[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" <u>Goel v. Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016) (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)).

When interpreting the allegations in a <u>pro se</u> complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>see also</u> <u>Branham v. Meachum</u>, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

"Nonetheless, a <u>pro se</u> complaint must state a plausible claim for relief," <u>Walker v. Schult</u>, 717 F.3d 119, 124 (2d Cir. 2013) (citing <u>Harris v. Mills</u>, 572 F.3d 66, 73 (2d Cir. 2009)), and the defendants have filed a Notice to Self-Represented Litigant Concerning Motion to Dismiss as required by Local Rule 12(a). Consistent with the liberal reading of a <u>pro se</u> plaintiff's complaint, "[a] district court deciding a motion to dismiss may consider factual allegations made by a <u>pro se</u> party

-8-

in his papers opposing the motion." Walker, 717 F.3d at 122 n.1.

**III. DISCUSSION**

As explained below, plaintiff Kwadwo Yeboah lacks standing

to sue and the court lacks subject matter jurisdiction over most

of the claims by Cheryl Yeboah in this action and dismisses the

remainder for failure to state a claim.

**A.    Kwadwo Yeboah--Article III Standing**

In order to establish constitutional standing,

> [f]irst, the plaintiff must have suffered an "injury
> in fact"—an invasion of a legally protected interest
> which is (a) concrete and particularized; and (b)
> "actual or imminent, not 'conjectural' or
> 'hypothetical.'" Second, there must be a causal
> connection between the injury and the conduct
> complained of ... Third, it must be "likely," as
> opposed to merely "speculative," that the injury will
> be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)

(citations omitted). "[T]he injury-in-fact requirement[ ] . . .

helps to ensure that the plaintiff has a personal stake in the

outcome of the controversy." Lacewell v. Office of Comptroller

of Currency, 999 F.3d 130, 141 (2d Cir. 2021) (quoting Susan B.

Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)). "The party

invoking federal jurisdiction bears the burden of establishing

[standing]." Lujan, 504 U.S. at 561.

Kwadwo Yeboah was not a defendant in the foreclosure

action, and all of the injuries alleged in the Amended Complaint

arise out of or are related to the foreclosure action. To the

contrary, U.S. Bank's repossession of the premises in the foreclosure action was delayed because Kwadwo Yeboah was residing there as a nonparty, and a summary process action was required. Consistent with this fact, the recitations of injury in the Amended Complaint are descriptions of injuries suffered by a single person only as a result of litigating the foreclosure action, e.g. "I have also suffered intense anxiety attacks." <u>See</u> Am. Compl. at 11–12.

Consequently, no injury-in-fact has been alleged as to Kwadwo Yeboah with respect to any defendant in this action, and he lacks Article III standing to bring any of the claims in the Amended Complaint.

**B.   The State Defendants--Official and Individual Capacity**

As to Cheryl Yeboah's claims against the State Defendants, "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 121 (1984). The Amended Complaint names as defendants the State of Connecticut and numerous Connecticut Superior Court judges. "States—and state officers, if sued in their official capacities for retrospective relief—are immunized by the Eleventh Amendment from suits brought by private citizens in federal court . . . ." <u>K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of State of N.Y.</u>, 189 F.3d 273, 278

(2d Cir. 1999). "[A]s when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Pennhurst, 465 U.S. at 101-02.

Although Ex parte Young, 209 U.S. 123 (1908), provides an exception to the Eleventh Amendment bar, the Amended Complaint does not meet the requirements for that exception. Under Ex parte Young, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (citing Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002); In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372 (2d Cir. 2005)). "[D]eclaratory relief is not permitted under Ex parte Young when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." New York State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York, 911 F. Supp. 2d 111, 129 (N.D.N.Y. 2012). "[T]he Ex [p]arte Young exception extends only to violations of federal law, not state law." Campbell v. Waterbury, 585 F. Supp. 3d 194, 203 (D. Conn. Feb. 9, 2022)

(citing Vega v. Semple, 963 F.3d 259, 283 (2d Cir. 2020)).

Here, the Amended Complaint seeks only retrospective relief in the form of money damages. See Am. Compl. at 10-11, 14, 16-17. The Eleventh Amendment bars such official-capacity claims against the State Defendants. See K & A Radiologic, 189 F.3d at 278. Furthermore, Congress has not abrogated their sovereign immunity through any of the statutes upon which Cheryl Yeboah relies, and the State Defendants have not otherwise consented to suit.[2] See Torres v. Tex. Dep't of Public Safety, 597 U.S. 580, 587 (2022) (stating that a state's Eleventh Amendment sovereign immunity may be overcome through consent, through congressional abrogation, or through the "plan of the [Constitutional] Convention").

Nor does 42 U.S.C. § 1983 abrogate the established Eleventh Amendment immunity of the State Defendants in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent.")

---

[2] Although there is a passing reference in the Amended Complaint to the Tucker Act as a source of relief, see Am. Compl. at 12, the Amended Complaint acknowledges that the Tucker Act "is a federal statute of the United States by which the United States government has waived its sovereign immunity . . . ." Id. The Tucker Act abrogates the sovereign immunity of the United States, not of any individual state. See, e.g., United States v. Navajo Nation, 556 U.S. 287, 290 (2009) (noting that the Tucker Act waives federal sovereign immunity); Tabor v. United States, No. 3:22-cv-795 (VDO), 2024 WL 4335601, at *3 (D. Conn. Sep. 27, 2024) (same).

The court also lacks jurisdiction over Cheryl Yeboah's state law claims against the State Defendants under the Pennhurst doctrine. Under that doctrine, "'a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment,' and the Court extended the principle to apply equally to 'state-law claims brought into federal court under pendent jurisdiction.'" Vega, 963 F.3d at 284 (quoting Pennhurst, 465 U.S. at 121). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Pennhurst, 465 U.S. at 106. This jurisdictional bar applies to a claim "regardless of whether it seeks damages or injunctive relief." Id. at 102.

To the extent that Cheryl Yeboah is suing the Superior Court judges in their individual capacities, "[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991); Forrester v. White, 484 U.S. 219, 225-26 (1988)). Nothing in the Amended Complaint suggests that the conduct of any of the judges was "in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 357 (1978) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871)).

-13-

Therefore, Cheryl Yeboah's claims against the State Defendants are being dismissed for lack of subject matter jurisdiction.

### C.  The Remaining Defendants

For the reasons set forth below, the court declines to determine whether, as argued by the defendants, Cheryl Yeboah's claims are barred under the Rooker-Feldman doctrine; concludes that to the extent it has subject matter jurisdiction over those claims, they should be dismissed for failure to state a claim; and concludes that the remaining state claims must be dismissed for lack of diversity jurisdiction.

### 1.  The Rooker-Feldman Doctrine

The defendants argue that Cheryl Yeboah's claims are barred under the Rooker-Feldman doctrine.[3] The Second Circuit has "articulated a four-part test according to which Rooker-Feldman applies if '(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.'" Hunter v. McMahon, 75 F.4th 62, 68 (2d Cir. 2023) (quoting Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014)). "Simply

---

[3] The court concludes that Younger abstention and Colorado River abstention are inapplicable here because the state court action has concluded.

stated, '[p]roceedings end for Rooker-Feldman purposes when the
state courts finally resolve the issue that the federal court
plaintiff seeks to relitigate in a federal forum.'" Id. at 70
(quoting Mothershed v. Justices of Supreme Court, 410 F.3d 602,
604 n.1 (9th Cir. 2005)).

The Rooker-Feldman doctrine "generally does not affect a
federal court's jurisdiction over claims for damages against
third parties for alleged misconduct occurring in the course of
a state court proceeding, because the adjudication of such
claims would 'not require the federal court to sit in review of
the state court judgment.'" Hansen v. Miller, 52 F.4th 96, 100
(2d Cir. 2022) (quoting Vossbrinck, 773 F.3d at 426). This
exception to the Rooker-Feldman doctrine applies where the
plaintiffs "seek damages from [the defendants] for injuries [the
plaintiffs] suffered from their alleged fraud," not a
"determin[ation] that the foreclosure judgment was issued in
error." Vossbrinck, 777 F.3d at 427.

Here, the first and fourth Rooker-Feldman elements are
satisfied. As to the second and third elements, even when
construed liberally and interpreted to raise the strongest
arguments that it suggests, the Amended Complaint is so lacking
in terms of particularized factual allegations beyond
descriptions of the alleged injuries suffered by Cheryl Yeboah,
and also lacking in terms of allegations as to what specific

-15-

conduct that supports her claims occurred at what particular point in time, that the court cannot determine whether Cheryl Yeboah could ever allege a claim "for fraud in the procurement of the state court foreclosure judgment [that] can be considered independently of the merits of that foreclosure judgment." Hansen, 52 F.4th at 100; see also Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 94-95 (2d Cir. 2015) (Rooker-Feldman inapplicable where the plaintiff's claims "sp[oke] not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments").

In addition, neither side has addressed in the briefing whether this particular exception to the Rooker-Feldman doctrine is applicable.

"On some occasions . . . considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject-matter jurisdiction when the case may be disposed of on a simpler ground." Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 155 (2d Cir. 1996). "In exercising its discretion as to which question to consider first, a court should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved and that the alternative ground is considerably less difficult to decide." Id. Those requirements are satisfied here.

-16-

2.    **Failure to State Federal Claims**

To the extent the court has subject matter jurisdiction over Cheryl Yeboah's federal claims against the remaining defendants, i.e. those other than the State Defendants, the Amended Complaint fails to state a claim under any theory of recovery.

First, as to 42 U.S.C. § 1983, the Amended Complaint alleges:

> U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUS their attorneys of MCCALLA RAYMER LEIBERT PIERCE LLC (101589) as a state actor is operating in commerce. The U.S. Constitution and the 1964 Civil Rights Act guarantee individuals certain civil rights and liberties. If a state actor deprives a person of their civil rights, that person may have a cause for legal action against them through a civil rights lawsuit in either state or federal court. This article focuses on 42 U.S.C. § 1983, a section of the U.S. Code that provides a civil cause of action against the person(s) responsible for the deprivation.

Am. Compl. at 4–5. A § 1983 claim requires that the conduct was "committed by a person acting under color of state law." Cornejo, 592 F.3d at 127 (quoting Pitchell, 13 F.3d at 547). However, the facts alleged in the Amended Complaint do not establish or even suggest that any of these remaining defendants was acting under color of state law. Even if the court construes the Amended Complaint as "contend[ing] that [the defendants] acted in concert with a state actor and thus are subject to liability under § 1983 on that theory . . . the plaintiff fails to state a claim under

§ 1983. The only allegations in the complaint are conclusory, unsupported and unexplained assertions that the defendants somehow violated unspecified civil rights by permitting the foreclosure proceeding to proceed . . . ." Caires v. Adams, No. 3:17-cv-1993 (AWT), 2018 WL 8729588, at *3 (D. Conn. Aug. 27, 2018).

Second, Cheryl Yeboah's claims under the FDCPA are time-barred. The FDCPA establishes a strict one-year statute of limitations from the date of the alleged violation. See Costello v. Wells Fargo Bank NA, No. 21-cv-1388 (VAB), 2022 WL 1912870, at *11 (D. Conn. June 3, 2022) (quoting Rotkiske v. Klemm, 589 U.S. 8, 10 (2019)). "[T]he pendency of litigation does not extend the statute of limitations." Id.

Here, the claimed debt collection[4] commenced no later than at the time of the commencement of the foreclosure action in 2012. See id. ("The violations that [the plaintiff] alleges, however, occurred well before this limitations period; as relevant to the foreclosure action[], these began to accrue at the latest on [the filing date].") Given that Cheryl Yeboah claims that the foreclosure action was a form of debt collection for purposes of the FDCPA, the commencement of that action in 2012 is the latest

---

[4] Also, U.S. Bank was a mortgagee collecting debt owed to it and not to "another," 15 U.S.C. § 1692a(6), and such activity falls outside the FDCPA's statutory scope. See Yeboah, 2019 WL 3388045, at *12 (quoting 15 U.S.C. § 1692a(6); Henson v. Santander Consumer USA Inc., 582 U.S. 79, 83, 87 (2017)) (holding that a previous owner of the same mortgage note in this litigation, who similarly acquired it from another previous owner, was not a "debt collector" under the FDCPA).

possible date that a violation could have occurred under the FDCPA, so any FDCPA claims are time-barred.

Third, the Tucker Act does not provide Cheryl Yeboah a private right of action against any of the remaining defendants. "Neither the Tucker Act nor the Indian Tucker Act creates substantive rights; they are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." Navajo Nation, 556 U.S. at 290 (citing United States v. Testan, 424 U.S. 392, 400 (1976); United States v. Mitchell, 445 U.S. 535, 538 (1980)). In any event, the Tucker Act only relates to actions against the United States. See id. Cheryl Yeboah fails to state a claim because none of the remaining defendants is the United States.

Fourth, Cheryl Yeboah's remaining federal claims are based on criminal statutes. "Federal criminal statutes do not provide private rights of action." Xu v. Neubauer, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (citing Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86-87 (2d Cir. 1972); Sheehy v. Brown, 335 Fed. App'x 102, 104 (2d Cir. 2009)).

### 3.  Lack of Diversity Jurisdiction

Having dismissed the federal claims in the Amended Complaint, the court lacks subject matter jurisdiction over the remaining state law claims. The plaintiffs are both citizens of Connecticut, and it is apparent from the Amended Complaint that

-19-

more than one of the many defendants in this action is also a
Connecticut citizen. The presence of even one of these non-
diverse parties means the court does not have subject matter
jurisdiction over the remaining state law claims pursuant to 28
U.S.C. § 1332(a). See Exxon Mobil Corp. v. Allapattah Servs.,
Inc., 545 U.S. 546, 553 (2005) ("[T]he presence in the action of
a single plaintiff from the same [s]tate as a single defendant
deprives the district court of original diversity jurisdiction
over the entire action."); Rush v. Hillside Buffalo, LLC, 314 F.
Supp. 3d 477, 481 (W.D.N.Y. 2018) (plaintiff failed to establish
diversity jurisdiction where the "[p]laintiff . . . failed to
identify any of [the defendant] LLC's members, let alone allege
their citizenship for diversity purposes").

Accordingly, Cheryl Yeboah's state law claims against the
remaining defendants are being dismissed for lack of subject
matter jurisdiction.

### D.    No Further Amendments

For the reasons stated in the ruling dismissing the
Yeboahs' previous federal action, the court will not grant leave
to further amend the complaint:

> While Ms. Yeboah has not yet moved for leave to
> amend the Complaint, for the reasons discussed below,
> granting such leave to amend also would be futile.
>
> "[I]t is often appropriate for a district court,
> when granting a motion to dismiss for failure to state
> a claim, to give the plaintiff leave to file an

amended complaint." Van Buskirk v. N.Y. Times Co., 325
F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark,
927 F.2d 698, 705 (2d Cir. 1991)). "Leave to amend
should be freely granted, but the district court has
the discretion to deny leave if there is a good reason
for it, such as futility, bad faith, undue delay, or
undue prejudice to the opposing party." Jin v. Metro.
Life Ins. Co., 310 F.3d 84, 101 (2d Cir.
2002) (citing Foman v. Davis, 371 U.S. 178, 182
(1962); Koehler v. Bank of Bermuda (N.Y.) Ltd., 209
F.3d 130, 138 (2d Cir. 2000)).

    . . . As a general matter, the Second Circuit has
recognized that the solicitude afforded to pro
se litigants includes a "relaxation of the limitations
on the amendment of pleadings[.]" Tracy[ v.
Freshwater, 623 F.3d 90, 101 (2d Cir.
2010)] (citing Holmes v. Goldin, 615 F.2d 83, 85 (2d
Cir. 1980)) ("A pro se plaintiff . . . should be
afforded an opportunity fairly freely to amend his
complaint."); see also Grullon v. City of New
Haven, 720 F.3d 133, 139 (2d Cir. 2013) ("A pro
se complaint should not be dismissed without the
Court's granting leave to amend at least once when a
liberal reading of the complaint gives any indication
that a valid claim might be stated.") (quoting Chavis
v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010))
(internal quotation marks and alterations omitted).

    But where there is no indication that pleading
additional facts would resuscitate a claim that has
been dismissed, the Court need not grant leave to
amend. See Gruillon, 720 F.3d at 140 ("Leave to amend
may properly be denied if the amendment would be
'futil[e].' ") (quoting Foman, 371 U.S. at
182); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131
(2d Cir. 1993) ("[w]here it appears that granting
leave to amend is unlikely to be productive . . . it
is not an abuse of discretion to deny leave to
amend."); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d
Cir. 2000) ("[W]e do not find that the complaint
'liberally read' suggests that the plaintiff has a
claim that she has inadequately or inartfully pleaded
and that she should therefore be given a chance to
reframe . . . . The problem with [this pro se
plaintiff's] causes of action is substantive; better
pleading will not cure it. Repleading would thus be

> futile. Such a futile request to replead should be
> denied.") (citations, internal quotation marks, and
> alterations omitted).

Yeboah, 2019 WL 3388045, at *15-16.

In addition, under the circumstances present here, it is apparent that "[t]his action [was] filed in bad faith, and any further amendment would also likely be made in bad faith, with the primary goal of engendering further delays in the state court foreclosure proceedings. . . . [B]ad faith is an independent reason for denying leave to amend." Id. at *16 n.10 (citing Jin, 310 F.3d at 101; McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)). When they filed this case, the Yeboahs had been on notice for more than four years of the ruling in Yeboah, 2019 WL 3388045. That court held that Kwadwo Yeboah did not have standing, see id. at *5-6, and dismissed the Yeboahs' FDCPA claims with prejudice, see id. at 12. Their contentions in that lawsuit are substantially the same as the ones they make here. Also, after filing that lawsuit, they initiated what appear to be bad-faith appeals and post-trial motions in state court, evidenced by filing no brief in their first appeal and a non-compliant brief in their second. See State Mem. at 3-5. The Connecticut Superior Court terminated the automatic stay triggered by the second appeal because it found that the appeal was filed for the purpose of delay. See id. at 4-5.

In addition, the Yeboahs have filed dilatory pleadings in this case, such as motions to strike opposing parties' notices of appearance, ECF Nos. 23, 25; a motion for writ of mandamus to the Connecticut Superior Court, ECF No. 89; a second, nearly verbatim motion for writ of mandamus, ECF No. 95; a motion for default judgment filed after the defendants had already submitted motions to dismiss, ECF No. 91, and an objection to the court's denial of the motion for default judgment, ECF No. 93; and a "judicial notice" seemingly seeking sanctions against unspecified attorneys or parties in this action or in the state court foreclosure action, ECF No. 94.

IV.  **CONCLUSION**

For the reasons set forth above, the defendants' motions to dismiss (ECF Nos. 31, 34, and 47 through 59) are hereby GRANTED, and the Amended Complaint is dismissed with prejudice.

The Clerk shall close this case.

It is so ordered.

Dated this 15th day of January 2025, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge